UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HOUSTON POLICE OFFICERS' PENSION SYSTEM, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 08-civ-0333 |
| STATE STREET BANK AND TRUST COMPANY and STATE STREET GLOBAL ADVISORS, INC., | § § § § | |
| Defendants. | § § | |

## ANSWER

Defendants State Street Bank and Trust Company ("SSBT") and State Street Global Advisors (collectively, "State Street")[1] for their Answer to Plaintiff's Original Complaint ("Complaint") hereby state as follows:

1.     Admitted that the Houston Police Officers' Pension System ("HPOPS") decided to invest in a commodities strategy known as the Enhanced Dow Jones-AIG Commodities Strategy (the "Commodities Strategy"), that as of May 2007, HPOPS had provided $72 million in connection with its investment in the Commodities Strategy, and that $54,298,176.00 of this amount was invested as part of the Commodities Strategy in the Limited Duration Bond Fund ("LDBF" or the "Fund") managed by State Street. State Street denies that the purpose of the investment in LDBF was "to cover potential losses on commodities futures swaps," but rather was to earn a return to cover the costs of investing in swaps, further denies the remaining facts

---

[1] The Complaint incorrectly names State Street Global Advisors, Inc., as a defendant. State Street Global Advisors, Inc., is a holding company with no connection to the allegations of the Complaint, and should be dismissed as a party defendant. *See* paragraph 9, *infra*.

and allegations of paragraph numbered 1, and further says that the remaining allegations of paragraph numbered 1 state legal conclusions to which no answer is required, but to the extent an answer is required, denied.

2.    State Street says that the investment objective of LDBF is set forth in written documents that speak for themselves, and to the extent these written documents differ from the allegations of paragraph numbered 2, State Street denies the same, further says that the written documents that are quoted also state that LDBF invests in, among other things, futures, options, and swaps, and otherwise denies the remaining allegations of paragraph numbered 2.

3.    Denied.

4.    State Street admits that during the summer of 2007, a period of unprecedented market volatility and illiquidity, LDBF's performance was below its benchmark, and that LDBF generally experienced millions of dollars in losses, but otherwise denies the remaining allegations of paragraph numbered 4.

5.    State Street admits that at a certain point in 2007, certain commingled funds managed by State Street held 38,856,819 units of LDBF on behalf of other customers, that certain of the LDBF units held by other State Street commingled funds were redeemed pursuant to established procedures, that HPOPS was notified in advance of such redemptions pursuant to the communication referenced in paragraph numbered 53, and that following redemption by the commingled funds, HPOPS owned approximately 88% of the units in the Fund, but otherwise denies the remaining allegations of paragraph numbered 5.

6.    Denied.

7.    State Street is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph numbered 7.

8. State Street admits the first two sentences of paragraph numbered 8, says that the allegations set forth in the third sentence of paragraph numbered 8 are legal conclusions to which no answer is required, and further says that SSBT's authority and control over LDBF and the Trust referenced in paragraph numbered 8 are set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 8.

9. State Street admits that State Street Global Advisors, Inc., is a Delaware corporation and a wholly-owned subsidiary of State Street Corporation, but says that State Street Global Advisors, Inc., does not perform any of the investment management functions at issue in the Complaint, says that State Street Global Advisors ("SSgA"), an unincorporated division of SSBT, provided the investment management services at issue in the Complaint and has a principal place of business in Boston, Massachusetts, but is not a distinct legal entity and is not the same as State Street Global Advisors, Inc., admits that HPOPS invested certain funds in LDBF, further says that State Street's authority over those funds and over the investments of LDBF are set forth in written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 9.

10. The allegations of paragraph numbered 10 state legal conclusions to which no answer is required.

11. State Street says that the Investment Management Agreement ("IMA") referenced in paragraph numbered 11 is written and speaks for itself, and further says that the remaining allegations in paragraph 11 state legal conclusions to which no answer is required, but to the extent an answer is required, denied.

12-13. State Street is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraphs numbered 12-13.

14.     State Street says that the Power Point presentation referenced in paragraph numbered 14 is a written document that speaks for itself, and otherwise denies the remaining allegations of paragraph numbered 14.

15.     State Street says that the terms and objectives of HPOPS's investment in the Commodities Strategy, including the terms governing investment of the funds provided by HPOPS, are set forth in a written document that speaks for itself, and otherwise denies the allegations in the first four sentences of paragraph numbered 15 as setting forth broad generalizations, admits that HPOPS, like other State Street clients who invested in State Street's Enhanced Dow Jones-AIG Commodities Strategy, provided funds equivalent to the full notional value of its investment in the Commodities Strategy, admits that 75% of the funds provided by HPOPS were held by State Street and invested in LDBF, and that the remaining 25% was held by AIG Financial Products Corp. ("AIG"), the swap provider, in a margin account, admits that on pre-specified settlement dates, AIG either deposited additional funds into HPOPS' LDBF account or withdrew funds from that account, depending upon the performance of the commodities swaps, but denies that such settlements occurred daily or that any corresponding need existed to withdraw funds from LDBF "on a daily basis," and otherwise denies the remaining allegations of paragraph numbered 15.

16.     State Street admits that it offered a commodities strategy known as the Enhanced Dow Jones-AIG Commodities Index Strategy to institutional investors, but says that HPOPS' investment in the Commodities Strategy was a separately managed strategy, and not part of the fund utilized by other institutional investors, and otherwise denies the remaining allegations of paragraph numbered 16.

- 4 -

17. State Street says that the August 2005 presentation referenced in paragraph numbered 17 is a written document that speaks for itself, admits that "'[a]sset-backed' securities generally do not include mortgage-backed securities," but denies that the term "mortgage-backed securities" is understood to include the entire universe of securities collateralized by home equity debt obligations, and further says that the term "asset-backed securities" is generally understood to refer to securities collateralized by debt obligations, including but not limited to residential mortgage and home equity debt, and otherwise denies the remaining allegations of paragraph numbered 17.

18. State Street admits that LDBF was formed under the Declaration of Trust referenced in paragraph numbered 18, which is written and speaks for itself, that it issued an Amended Fund Declaration for LDBF effective as of October 1, 2005, which is also written and speaks for itself, that State Street managed LDBF, and that State Street issued units of LDBF to HPOPS, but says that the remaining allegations of paragraph numbered 18 state legal conclusions to which no answer is required, but to the extent an answer is required, denied.

19. State Street admits that on or before September 13, 2005, HPOPS selected State Street to manage its investments in the TIPS and Commodities Strategies, and that HPOPS first invested in the TIPS Strategy and subsequently invested in the Commodities Strategy, but is otherwise without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the first two sentences of paragraph numbered 19, further admits that on or about December 6, 2005, HPOPS and State Street executed an IMA that is written and speaks for itself, and says that the remaining allegations of paragraph numbered 19 state legal conclusions to which no answer is required, but to the extent an answer is required, denied.

20.     State Street says that the April 24, 2006 and June 8, 2006 e-mails referenced in paragraph numbered 20 are written and therefore speak for themselves, and to the extent these written documents differ from the allegations in paragraph numbered 20, State Street denies the same.

21.     State Street admits that on or about June 16, 2006, HPOPS and SSgA executed the First Amendment to the IMA, which is written and speaks for itself, but otherwise denies the remaining allegations of paragraph numbered 21.  With respect to the allegations in footnote 1, State Street admits that on or about April 20, 2007, HPOPS closed its TIPS portfolio and told State Street that its decision was based upon rising fees, but is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of footnote 1.

22.     The Amended IMA referenced in paragraph numbered 22 is written and speaks for itself, and State Street otherwise denies the remaining allegations of paragraph numbered 22.

23.     The Amended IMA referenced in paragraph numbered 23 is written and speaks for itself, and State Street otherwise denies the remaining allegations of paragraph numbered 23.

24.     The quoted language in paragraph numbered 24 comes from a written document that speaks for itself, and State Street otherwise denies the remaining allegations of paragraph numbered 24.

25.     State Street admits that HPOPS was required to execute an ISDA with AIG, which agreement is written and speaks for itself, and is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations concerning the ISDA, admits that AIG was the swap counterparty for commodities futures swaps entered into on HPOPS' behalf in connection with its investment in the Commodities Strategy, that 25% of the

funds provided by HPOPS were held by AIG, and that HPOPS invested the remaining 75% with State Street, but otherwise denies the remaining allegations of paragraph numbered 25.

26.     State Street admits that HPOPS provided funds equaling 100% of the notional value of its investment in the Commodities Strategy, and that any losses on HPOPS's investments in commodities swaps came first out of the funds held by State Street, is without knowledge or information sufficient to form a belief as to HPOPS' alleged "desire" not to leverage its investment in the Commodities Strategy, and otherwise denies the remaining allegations of paragraph numbered 26.

27.     State Street says that HPOPS invested $72 million in the Commodities Strategy, that HPOPS instructed Northern Trust Company to wire $6 million monthly from June 2006 through May 2007 to State Street, that State Street transferred 25% of this amount to AIG each month, and that the remaining 75% was invested in LDBF, says that the Amended IMA referenced in paragraph numbered 27 is written and therefore speaks for itself, and further says that the remaining allegations of paragraph numbered 27 state legal conclusions to which no answer is required, but to the extent an answer is required, denied.

28.     State Street says that the SSgA Account Summary referenced in paragraph numbered 28 is written and therefore speaks for itself, admits that 75% of the collateral HPOPS provided in connection with its investment in the Commodities Strategy was invested in LDBF, and that as of May 31, 2007, HPOPS held 4,719,665.291 units of LDBF with a market value of $56,272,569.26, but otherwise denies the remaining allegations of paragraph numbered 28.

29.     Denied.

30.     State Street says that it regularly provided information concerning HPOPS' investment in the Commodities Strategy during the referenced period, and further says that it

provided information concerning the market value of HPOPS' investment in LDBF during the first quarter of 2007, is without knowledge or information sufficient to form a belief as to the truth of the allegation that "HPOPS became worried," but denies that HPOPS requested information concerning LDBF's composition or performance before July 2007, admits that in or about May 2007, Pat Franey requested certain account reconciliations, but states that such requests concerned accounting issues and did not concern LDBF's performance, and otherwise denies the remaining allegations of paragraph numbered 30.

31.     State Street says that the e-mails referenced in paragraph numbered 31 are written and speak for themselves, further says that the Complaint selectively quotes the referenced e-mails and that, in fact, Mr. Franey's May 11, 2007 e-mail asked how long it would take to liquidate HPOPS's investments in the absence of any "market event," and explicitly recognized that "there are significant issues of not wanting to sell during a market event, but let's assume there is no market event," and otherwise denies the remaining allegations of paragraph numbered 31.

32.     State Street admits that on or about July 18, 2007, State Street sent the portfolio account summary referenced in paragraph numbered 32, which is written and speaks for itself, but is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph numbered 32.

33.     State Street says that the communications, spreadsheet, and Appraisal Report referenced in paragraph numbered 33 are all written and speak for themselves, and to the extent that they differ from the allegations of paragraph numbered 33, State Street denies the same, and otherwise denies the remaining allegations of paragraph numbered 33.

34.     State Street says that the communications and documents referenced in paragraph numbered 34 and footnote 2 are written documents that speak for themselves, but denies that it sent HPOPS a "prospectus" and says that it provided HPOPS with an annual report and, as done previously, a Fact Sheet, and otherwise denies the remaining allegations of paragraph numbered 34.

35.     State Street says that on or about July 24, 2007, Craig DeGiacomo sent Pat Franey financial statements for the Limited Duration Bond Fund dated December 31, 2006 and audited by PriceWaterhouseCoopers, which are written and speak for themselves, is without knowledge or information sufficient to form a belief as to the truth of the allegations of the fourth sentence of paragraph numbered 35 regarding HPOPS' concerns, and denies the remaining allegations of paragraph numbered 35.

36.     Admitted that on or about July 24, 2007, State Street sent HPOPS the Amended Fund Declaration referenced in paragraph 36, which is written and speaks for itself, and to the extent the written document differs from the allegations of paragraph numbered 36, State Street denies the same.

37.     State Street says that the August 28, 2007 and September 11, 2007 presentations referenced in paragraph numbered 37 are written and speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 37.

38.     State Street says that LDBF has at times invested in, among other things, asset-backed securities and derivative instruments, including the BBB ABX Index, admits that LDBF has made "leveraged" investments, but denies the implication that financial or "notional" leverage is commensurate with an increase in risk, and denies the remaining allegations of paragraph numbered 38.

39.     State Street says that the July 20, 2007 e-mail and other communications referenced in paragraph 39 are written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 39.

40.     State Street says that the July 26, 2007 e-mail referenced in paragraph numbered 40 is a written document that speaks for itself, further says that State Street disclosed before July 2007 that LDBF invested in swaps, and otherwise denies the remaining allegations of paragraph numbered 40.

41.     State Street admits that in or about late July or early August 2007, Mr. Franey requested certain information from State Street concerning HPOPS's investment, says that State Street responded to these requests, and otherwise denies the remaining allegations of paragraph numbered 41.

42.     State Street admits that in or about the first week of August 2007, Craig DeGiacomo sent a letter to Pat Franey, which is written and speaks for itself, and otherwise denies the remaining allegations of paragraph numbered 42.

43.     State Street admits that on or about August 28, 2007, Craig DeGiacomo, James D. Hopkins, and John A. Tucker of SSgA made a presentation to HPOPS regarding LDBF, says that the Power Point slides referenced in paragraph numbered 43 are written and speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 43.

44.     State Street says that during the August 28, 2007 presentation, State Street and HPOPS discussed that at certain times, a substantial amount of LDBF's assets was invested in asset-backed securities, and that investing in secured debt had always been a central component of LDBF's strategy, further says that the August 2005 presentation, December 31, 2006 Audit Report, Fund Declaration, Fact Sheet, and August 28, 2007 and September 11, 2007 Power Point

presentations are written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 44.

45. State Street admits that at a meeting with HPOPS on or about August 28, 2007, State Street discussed LDBF's investment in the BBB tranche of the ABX Index, says that its description of the ABX Index and the documents referenced in the third sentence of paragraph numbered 45 are written and speak for themselves, further says that the ABX index is a series of credit default swaps and that written materials previously provided to HPOPS stated that LDBF utilized an expanded universe of securities, including derivative instruments such as "swaps," and otherwise denies the remaining allegations of paragraph numbered 45.

46. State Street admits that on or about September 11, 2007, Craig DeGiacomo, Paul Greff, and John Tucker of SSgA made a presentation to the HPOPS Board of Trustees, says that the quoted language and percentages in paragraph numbered 46 come from a written document that speaks for itself, and otherwise denies the remaining allegations of paragraph numbered 46.

47. State Street says that the New York Times article cited in paragraph numbered 47 is a written document that speaks for itself, further says that the final two sentences of paragraph numbered 47 state legal conclusions to which no answer is required, but to the extent an answer is required, denied, and otherwise denies the remaining allegations of paragraph numbered 47.

48. State Street admits that on or about September 19, 2007, Craig DeGiacomo sent Pat Franey an e-mail with a retracement analysis, and that on or about October 1, 2007, Robert Pickett sent Mr. Franey a spreadsheet, which documents are written and speak for themselves, and to the extent these written documents differ from the allegations of paragraph numbered 48, State Street denies the same, further says that the allegations in paragraph

numbered 48 concerning market value, percentage of ownership, and percentage investments also come from written documents that speak for themselves, says with respect to the allegations in footnote 3 that redemptions by certain State Street commingled funds that held units of LDBF on behalf of other State Street customers were conducted pursuant to established procedures and that on or about August 8, 2007, State Street sent an e-mail to HPOPS stating that certain State Street commingled funds holding units of LDBF would be redeeming their investments in-kind, and otherwise denies the remaining allegations of paragraph numbered 48.

49.     State Street admits that in or about October 2007, State Street sent a spreadsheet to Pat Franey containing data as of July 31, 2007 and as of September 17, 2007, which spreadsheet is written and speaks for itself, further says that the percentages referenced in paragraph numbered 49 concern LDBF's holdings on two different dates, and otherwise denies the remaining allegations of paragraph numbered 49.

50.     Denied.

51.     State Street says that the Complaint's use of the term "leverage" is vague and that LDBF has at times made investments in derivatives as disclosed that created a notional exposure in excess of the Fund's capital, but denies the implication that financial or notional "leverage" is commensurate with risk, admits that Craig DeGiacomo left Stacy Ables a voicemail in or about August 2007 responding to questions about notional leverage in LDBF, but is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations concerning what HPOPS "learned" or when, and otherwise denies the remaining allegations of paragraph numbered 51.

52.     Denied.

53.     State Street says that the e-mail from Megan Gibber to Pat Franey referenced in paragraph numbered 53 is a written document that speaks for itself, and otherwise denies the remaining allegations of paragraph numbered 53.

54.     State Street admits that on or about August 27, 2007, Craig DeGiacomo sent a spreadsheet to Pat Franey that is written and speaks for itself, and otherwise denies the remaining allegations of paragraph numbered 54.

55.     State Street says that the spreadsheet referenced in paragraph numbered 55 is written and speaks for itself, and otherwise denies the remaining allegations of paragraph numbered 55.

56.     State Street admits that on or about September 11, 2007, the parties held at a meeting, and that on or about October 4, 2007, State Street sent a document to HPOPS, which is written and speaks for itself, but otherwise denies the remaining allegations of paragraph numbered 56.

57.     State Street says that the figures referenced in paragraph numbered 57 come from a written document that speaks for itself, and otherwise denies the remaining allegations of paragraph numbered 57.

58.     State Street says that the August 28, 2007 e-mail referenced in paragraph numbered 58 is a written document that speaks for itself, and otherwise denies the remaining allegations of paragraph numbered 58.

59.     State Street admits that during the August 28, 2007 presentation by SSgA, the parties discussed investment in LDBF by certain State Street commingled funds and the effect of redemption by other LDBF investors on HPOPS' liquidity, and further says that Pat Franey's requests for information on or about September 12, 2007 come from a written document that

speaks for itself, but otherwise denies the remaining allegations of paragraph numbered 59.

60.    Denied.

61.    State Street says that the November 7, 2007 request and IMA referenced in paragraph numbered 61 are written documents that speak for themselves, and otherwise denies the remaining allegations of paragraph numbered 61.

62.    State Street says that the figures set forth in paragraph numbered 62 come from written documents that speak for themselves, says that HPOPS' LDBF's holdings were liquidated on December 14, 2007 pursuant to a letter of direction from HPOPS to State Street, further says that HPOPS received over $27 million in cash and securities on December 17, 2007 in connection with the liquidation of its investment in LDBF, and otherwise denies the remaining allegations of paragraph numbered 62.

63.    State Street says that on or about October 5, 2007 and October 8, 2007, the parties discussed constraints on HPOPS' ability to redeem in-kind in light of HPOPS' request to selectively redeem certain securities, as well as constraints relating to the size of the Fund and other Fund investors, that at various points HPOPS was orally told that under the circumstances, HPOPS could not redeem in-kind, that on or about October 9, 2007, the parties held a conference call during which they discussed HPOPS' continued interest in redeeming in-kind as well as two potential options that might permit such a redemption, that the October 5, 2007 letter from William Hunt referenced in paragraph numbered 63 is a written document that speaks for itself, and otherwise denies the remaining allegations of paragraph numbered 63.

64.    State Street admits that on or about November 13, 2007, HPOPS sent a letter to State Street which is written and speaks for itself, and that HPOPS was told that State Street would send two letters concerning liquidation of LDBF, further says that two such letters were

- 14 -

subsequently sent to HPOPS, and otherwise denies the remaining allegations of paragraph numbered 64.

65.     State Street says that the letter referenced in paragraph numbered 65 is written and speaks for itself, and is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph numbered 65.

66.     Admitted.

67.     State Street says that the letter referenced in paragraph numbered 67 is written and speaks for itself, and is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph numbered 67.

68.     State Street admits that on or about December 13, 2007, representatives of State Street held a conference call with HPOPS, that liquidation of LDBF was discussed during the conference call, including the liquidation of LDBF since early December 2007, and that HPOPS sent a letter to State Street after the call, which is written and speaks for itself, further says that the liquidation of LDBF proceeded pursuant to the governing Fund documents, and otherwise denies the remaining allegations of paragraph numbered 68.

69.     State Street admits that on or about December 17, 2007, HPOPS received $14,270,970 in cash and securities valued at $13,315,199, but otherwise denies the remaining allegations of paragraph numbered 69.

70.     State Street denies that the listed fees for the quarter ending 12/31/2007 are accurate, admits that the listed fees for the other quarters are accurate, and otherwise denies the remaining allegations of paragraph numbered 70.

71.     State Street hereby incorporates the answers set forth in paragraphs 1-70 above as if fully set forth herein.

72.     State Street says that the Amended IMA referenced in paragraph 72 is a written document that speaks for itself, and that the remaining allegations in paragraph numbered 72 state legal conclusions to which no answer is required, but to the extent an answer is required, denied.

73.     Denied.

74.     State Street admits that SSgA managed LDBF, says that the second sentence of paragraph numbered 74 states legal conclusions to which no answer is required, but to the extent an answer is required, denied, and otherwise denies the remaining allegations of paragraph numbered 74.

75.     State Street says that the allegations in the first two sentences of paragraph numbered 75 state legal conclusions to which no answer is required, but to the extent an answer is required, denied, and otherwise denies the remaining allegations of paragraph numbered 75.

76.     State Street says that the allegations in the first sentence of paragraph numbered 76 state legal conclusions to which no answer is required, but to the extent an answer is required, denied, and otherwise denies the remaining allegations of paragraph numbered 76.

77.     State Street says that the allegations in paragraph numbered 77 state legal conclusions to which no answer is required, but to the extent an answer is required, denied.

78.     Denied.

79.     State Street says that the allegations in the fifth sentence of paragraph numbered 79 state legal conclusions to which no answer is required, but to the extent an answer is required, denied, and otherwise denies the remaining allegations of paragraph numbered 79.

80.     Denied.

81.    State Street denies the first sentence of paragraph numbered 81, and says that the remaining allegations of paragraph numbered 81 are characterizations of plaintiff's claims and require no response, but to the extent an answer is required, denied.

82.    State Street hereby incorporates the answers set forth in paragraphs 1-81 above as if fully set forth herein.

83.    State Street admits that State Street and HPOPS entered into an Investment Management Agreement, amended on or about June 16, 2006, which is written and speaks for itself, and otherwise denies the remaining allegations of paragraph numbered 83.

84.    Denied.

85.    State Street denies the first sentence of paragraph numbered 85, and says that the remaining allegations of paragraph numbered 85 are characterizations of plaintiff's claims and require no response, but to the extent a response is required, denied.

86.    State Street hereby incorporates the answers set forth in paragraphs 1-85 above as if fully set forth herein.

87.    Denied.

88.    Denied.

89.    State Street admits that Craig DeGiacomo left Stacy Ables a voicemail in or about August 2007, is otherwise without knowledge or information sufficient to form a belief as to the truth of the allegations concerning what Ms. Ables "learned" and when, and otherwise denies the remaining allegations of paragraph numbered 89.

90.    Denied.

91.    Denied.

92.    Denied.

93.     State Street denies the first sentence of paragraph numbered 93, and says that the remaining allegations of paragraph numbered 93 are characterizations of plaintiff's claims that require no response, but to the extent a response is required, denied.

94.     State Street hereby incorporates the answers set forth in paragraphs 1-93 above as if fully set forth herein.

95.     The allegations in paragraph numbered 95 state legal conclusions to which no answer is required, but to the extent an answer is required, denied.

96.     Denied.

97.     The allegations in paragraph numbered 97 state legal conclusions to which no answer is required, but to the extent an answer is required, denied.

98.     Denied.

99.     Denied.

100.    State Street denies the first sentence of paragraph numbered 100, and says that the remaining allegations of paragraph numbered 100 are characterizations of plaintiff's claims that require no response, but to the extent a response is required, denied.

101.    State Street hereby incorporates the answers set forth in paragraphs 1-100 above as if fully set forth herein.

102.    The allegations in paragraph numbered 102 state legal conclusions to which no answer is required, but to the extent an answer is required, denied.

103.    State Street denies the first sentence of paragraph numbered 103, and says that the remaining allegations of paragraph numbered 103 are characterizations of plaintiff's claims that require no response, but to the extent a response is required, denied.

104.    State Street hereby incorporates the answers set forth in paragraphs 1-103 above as if fully set forth herein.

105.    Denied.

106.    The allegations in paragraph numbered 106 state legal conclusions to which no answer is required, but to the extent an answer is required, denied.

107.    Denied.

108.    The allegations in paragraph numbered 108 state legal conclusions to which no answer is required, but to the extent an answer is required, denied.

109.    The allegations in paragraph numbered 109 state legal conclusions to which no answer is required, but to the extent an answer is required, denied.

110.    Denied.

111.    State Street denies the first sentence of paragraph numbered 111, and says that the remaining allegations of paragraph numbered 111 are characterizations of plaintiff's claims that require no response, but to the extent a response is required, denied.

112.    The allegations of paragraph numbered 112 state legal conclusions to which no answer is required.

113.    State Street hereby incorporates the answers set forth in paragraphs 1-112 above as if fully set forth herein.

114.    Denied.

115.    Denied.

116.    State Street denies the first sentence of paragraph numbered 116, and says that the remaining allegations of paragraph numbered 116 are characterizations of plaintiff's claims that require no response, but to the extent a response is required, denied.

117.  Denied.

State Street denies each and every allegation of the Complaint to which it has not specifically admitted or otherwise responded herein above and further denies that plaintiff is entitled to the relief requested or to any relief whatsoever.

## FIRST DEFENSE

The Complaint fails to state a claim, in whole or in part, upon which relief can be granted.

## SECOND DEFENSE

Plaintiff's claims are barred, in whole or in part, by plaintiff's own conduct.

## THIRD DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands and in pari delicto.

## FOURTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by plaintiff's own negligence.

## FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of proportionate responsibility.

## SIXTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because plaintiff did not rely upon State Street's alleged misrepresentations.

## SEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by lack of causation.

### EIGHTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of assumption of risk.

### NINTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of ratification, waiver, laches, and estoppel.

### TENTH DEFENSE

The tort claims set forth in the Complaint are barred, in whole or in part, by plaintiff's claims sounding in contract.

### ELEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by plaintiff's failure to mitigate damages.

### TWELFTH DEFENSE

Plaintiff's claims are barred insofar as it has named the wrong party – State Street Global Advisors, Inc. – as a defendant in this action.

### THIRTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because a conspiracy cannot exist between a company and one of its unincorporated divisions.

### FOURTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because State Street has complied with all disclosure requirements under all applicable laws.

### FIFTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because plaintiff is a sophisticated investor, and by the lack of justifiable reliance.

## SIXTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because plaintiff knew or should have known of any alleged untruths or omissions by defendants.

## SEVENTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because defendants did not know, and in the exercise of reasonable care could not have known, of the existence of facts by reason of which liability is alleged to exist.

## EIGHTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because State Street has not received any benefit or enrichment as a result of the alleged breaches.

## NINETEENTH DEFENSE

To the extent that plaintiff challenges discretionary decisions made by State Street, the Complaint is barred, in whole or in part, because State Street committed no abuse of discretion, and its challenged conduct and activities were lawful and appropriate as a matter of law.

## TWENTIETH DEFENSE

Plaintiff's claims are barred, in whole or in part, because plaintiff is not as a matter of law entitled to the forms of relief it seeks in this action.

State Street reserves the right to assert additional affirmative defenses.

Dated: April 22, 2008

Respectfully submitted,

BAKER BOTTS LLP

By: /s/ David D. Sterling
David D. Sterling
Attorney-in-Charge
Texas Bar No. 19170000
Southern District No. 07079
Elizabeth Myers
Texas Bar No. 24047767
Southern District No. 611670
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
David.Sterling@bakerbotts.com
Elizabeth.Myers@bakerbotts.com
Tel: 713-229-1946
Fax: 713-229-7946

*Attorneys for Defendants State Street Bank
and Trust Company and State Street Global
Advisors, Inc.*

*Of Counsel:*
Harvey J. Wolkoff
Robert A. Skinner
Olivia S. Choe
ROPES & GRAY LLP
One International Place
Boston, MA 02110
Harvey.Wolkoff@ropesgray.com
Robert.Skinner@ropesgray.com
Olivia.Choe@ropesgray.com
Tel: 617-951-7000
Fax: 617-951-7050

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 22nd day of April, 2008, a true and correct copy of the foregoing Answer to Plaintiff's Original Complaint has been filed electronically using the Court's Electronic Case Filing System and, therefore, has been served upon all counsel who are Filing Users pursuant to Fed. R. Civ. P. 5(b)(3), Local Rule 5.1, and the Court's Procedures for Electronic Case Filing (No. 9).

/s/  David D. Sterling
David D. Sterling